## BULLIS v. MARSH ET AL.

1. **Tax Deed:** SALE EN MASSE: STATUTE OF LIMITATIONS. The validity of a tax deed cannot be questioned, on the ground that it shows on its face that several tracts of land were sold in mass, after the expiration of five years from the date of its execution.

2. ———: AS EVIDENCE: REGULARITY OF PROCEEDINGS. A tax deed is conclusive evidence that the lands described therein were properly advertised for sale, and at least *prima facie* evidence that a proper adjournment was made to the day on which the sale took place. It is not essential that such adjournment should be shown by the records.

3. **Tax Sale:** STATUTE OF LIMITATIONS: VOIDABLE SALE. The legality of a tax sale which is voidable only cannot be sustained after the expiration of five years from the date of the execution of the deed thereon.

4. ———: ———: POSSESSION. Where land remains unoccupied the title of the holder of a tax deed thereto becomes perfect at the expiration of five years from the date of its execution. Following *Moingona Coal Co. v. Blair*, 51 Iowa 447.

5. ———: REGULARITY OF: EVIDENCE. The fact that the tax sale register does not show an offering for sale of lands on the first Monday in October is not conclusive evidence that they were not so offered, nor sufficient to overcome the presumption in favor of the validity of a tax deed.

*Appeal from Butler Circuit Court.*

THURSDAY, JUNE 18.

THE plaintiff brings this action in equity to quiet his title to 140 acres of land, being the N½ N½ N W¼ and S½ NW¼ NW¼ and S½ NW¼, 2, 98, 12. The plaintiff claims title to said land through certain tax deeds. The defendant G. E. Marsh claims title to the land through purchase from the owner of the patent title. He alleges that

the tax title is void, and prays that his own title may be quieted. The court decreed that the plaintiff is the absolute owner of the property in controversy and quieted his title thereto. The defendant G. E. Marsh appeals.

*H. T. Reed* and *Foreman & Marsh*, for the appellant.

*L. Bullis, pro se.*

DAY, J.—The treasurer of Howard county, by deed executed and filed for record on the 17th day of May, 1866, and purporting to be in pursuance of a tax sale on April 29th, 1863, conveyed to McClure Cowan the SW$\frac{1}{4}$ of N W$\frac{1}{4}$ 2, 98, 12. At the same time, and purporting to be in pursuance of a tax sale held on the same day, the treasurer of Howard county conveyed to McClure Cowan the N$\frac{1}{2}$ N$\frac{1}{2}$ N W$\frac{1}{4}$ and the SE$\frac{1}{4}$ NW$\frac{1}{4}$ 2, 98, 12. This deed also conveyed several other tracts in different sections, townships and ranges. The said treasurer by deed executed July 28, and filed for record August 6, 1869, and purporting to be in pursuance of a sale held on October 3d, 1864, conveyed to J. H. Easton the S$\frac{1}{2}$ of the N W$\frac{1}{4}$ of N W$\frac{1}{4}$, 2, 98, 12. These several deeds include all the lands in controversy. On the 10th day of September, 1869, McClure Cowan conveyed to W. Strother and L. Bullis by quit claim. Afterward, Strother quit claimed to Bullis. On July 10th, 1872, James H. Easton conveyed by special warranty to L. Bullis. In this manner Bullis became invested with the tax title to all the land in controversy. On the 28th day of April, 1871, the treasurer of Howard county executed to McClure Cowan two tax deeds, each purporting to be as a duplicate of the deed executed May 17, 1866, one conveying the N$\frac{1}{2}$ N$\frac{1}{2}$, NW$\frac{1}{4}$, and the other the SE$\frac{1}{4}$ NW$\frac{1}{4}$, 2, 98, 12. Bullis and his grantor have paid the taxes on the lands from 1869 to 1876, both inclusive.

On April 16, 1877, Austin Corbin, the holder of the patent title, conveyed the entire N W$\frac{1}{4}$ 2, 98, 12 to the defendant Marsh, and he claims title to the lands under this con-

veyance. The other defendants made default. The land was unoccupied until October, 1876, when the defendant Strodley took possession for Corbin, and had three or four furrows broken around the quarter and seven or eight acres across the east end. After the sale to Marsh one Patterson went into possession and broke about sixty acres. We will first consider the objections urged by the defendant to the plaintiff's title.

I.   It is claimed that the title of the plaintiff to the N½ N¼ and SE¼ NW¼ of the section in controversy, eighty acres, is invalid, because the deed conveying includes ten distinct parcels of land *en masse* for the gross sum of $112.89. This deed was executed and recorded on the 17th day of May, 1866. This action was commenced on the 21st day of August, 1877, more than ten years after the recording of the tax deed. In *Thomas v. Stickle*, 32 Iowa, 71, it was held that under § 790 of the Revision, 902 of the Code of 1873, no objection to the validity of a tax title can be made on the ground that the deed shows upon its face that several tracts of land were sold for a gross sum, after the expiration of five years from the time of the sale. To the same effect see also *Douglass v. Tullock*, 34 Iowa, 262. These cases dispose of the question that the deed shows a sale *en masse*, and obviates the necessity of considering the effect of the deeds executed April 28, 1871.

*1. TAX DEED: sale en masse: statute of limitations.*

II.  It is urged that the alleged tax sale of April 29, 1863, upon which plaintiff bases his title to one hundred and twenty acres of the land in controversy, was in fact and law no sale.

*2 ———: as evidence: regularly of proceedings.*

1.   It is urged that there was no advertisement of the sale as required in § 764 of the Revision. The tax deed is conclusive evidence of the advertisement. See *Madson v. Sexton*, 37 Iowa, 562, and cases cited.

2.   It is claimed that there could have been no legal sale on April 29th, 1863, because there was no regular sale on the first Monday in October, 1862, from which an adjourn-

ment could be made. The evidence does not show that the delinquent lands were not regularly offered for sale on the first Monday in October, 1862, nor that there was not a regular adjournment at that time. The only evidence upon that point is the testimony of one who was clerk of the board of supervisors, as follows: "I don't remember of any what you might call *regular* sale in 1861 or 1862. There were some sales to a few individuals during various times.

3. The evidence shows that after the first Monday in October, 1862, sales occurred at intervals of less than two months, until the sale occurred under which the plaintiff claims. It is objected that the register of sales contains no note of any adjournment of any of the sales. It is not necessary that the record should show an adjournment of the sale where the sale occurs at a time other than the first Monday in October. The deed is at least *prima facie* evidence of the regularity of the proceedings in this respect. *Easton v. Savery*, 44 Iowa, 654; *Eldridge v. Kuehl*, 27 Id., 160; *Sully v. Kuehl*, 30 Iowa, 275; *Love v. Welch*, 33 Id., 192; *Lorain v. Smith*, 37 Id., 67.

4. The evidence shows that after the regular sale in October, it was customary for the treasurer to keep the sale open from day to day, in order that any one who desired might come in and make selections, which were entered up sold. The tax sale register shows a sale to McClure Cowan, April 29, 1863, of 12,983 acres. The evidence does not show in what manner the sale was conducted on that day. It is claimed by appellant that the facts bring the case within the doctrine of *Butler v. Delano*, 42 Iowa, 350; *Thompson v. Ware*, 43 Iowa, 455; and *Miller v. Corbin*, 46 Id., 150. In those cases it was affirmatively shown that there was no adjournment of the sale to the day named, and that there was no public offering of the lands. These facts do not affirmatively appear in this case. The case comes more nearly within the doctrine of *Leavitt v. Watson*, 37 Iowa, 93. The *prima facie* case made by the deed is not rebutted, and more

especially is this so in view of the fact that more than five years had elapsed since the completion of the sale.

III. It is objected that the sale of October 3d, 1864, upon which plaintiff bases title to the S½ N W 40, was a ring sale and **1. TAX SALE:** fraudulent. In *Van Shaack v. Robbins*, 36 Iowa, **statute of** 201, it was held that a ring sale is not void, but **limitations:** **voidable sale.** voidable only. If the sale was merely voidable, it cannot, under the doctrine of the authorities already cited, be questioned after the lapse of five years from the completion of the sale.

IV. We now come to a consideration of the affirmative relief asked by the plaintiff. The evidence shows that for **4. ——; ——:** more than five years after the execution and re-**possession.** cording of the tax deeds under which the plaintiff claims title, the land was unimproved and wholly unoccupied. In *Moingona Coal Co. v. Blair*, 51 Iowa, 447, it was held by a majority of this court that if the owner of the patent title does not take possession during the period of limitation, and the land during that time remains unoccupied, the title of the holder of the tax deed becomes perfect at the expiration of that period.

This case is decisive of the right of the plaintiff to the affirmative relief asked. See also *Lewis v. Soule.*

AFFIRMED.

ON REHEARING.

Within the time prescribed by rule of court a petition for rehearing was filed. The only point made in the petition **5. ——; regu-** for rehearing which we deem it necessary to no-**larity of** **evidence.** tice is the claim that the petition fails to consider the fact that the tax sale register was introduced in evidence, and fails to show any offering of the lands for sale on the first Monday in October, 1862. The appellant cites and relies upon *Chandler v. Keeler*, 46 Iowa, 596. This case simply holds that the tax sale register is admissible in evi-

dence as a circumstance tending to show that there was no adjournment, if no adjournment is shown upon it. The weight and effect of such evidence is not determined. We are of opinion that the silence of the tax sale register as to an offering of the lands on the first Monday in October, taken in connection with the other evidence in this case, does not overcome the *prima facie* evidence of regularity arising out of the production of the deed. The petition for rehearing is overruled.